(C. D. 1630)

SPARTAN AIRCRAFT COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 30, 1954)

*Leve, Hecht, Hadfield & McAlpin* (*Harold A. Felix* and *C. Lansing Hays, Jr.*, of counsel) for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*Richard H. Welsh,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The question here presented for our determination is the proper classification and assessment with duty of an importation from Switzerland of what is described on the consular invoice as "Aluminium extruded angle" in lengths from 17 to 20 feet. A sample which represents the importation in every material respect except as to length was received in evidence and marked exhibit 1.

The merchandise was assessed with duty at the rate of 22½ per centum ad valorem pursuant to the provision in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802), for—

Articles or wares not specially provided for, whether partly or wholly manufactured:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

 Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

 Other &ast; &ast; &ast;_____ 22½% ad val.

The sole claim of plaintiff is that the importation should have been subjected to duty at the rate of 3 cents per pound within the provision in paragraph 374 of said act (19 U. S. C. § 1001, par. 374), as modified, *supra*, as follows:

Aluminum, aluminum scrap, and alloys (except those provided for in paragraph 302, Tariff Act of 1930) in which aluminum is the component material of chief value:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

 In coils, plates, sheets, bars, rods, circles, disks, blanks, strips, rectangles, and squares_____ 3¢ per lb.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

It is the contention of plaintiff that the merchandise is a raw material which falls within the class of articles enumerated in said paragraph 374; that the enumeration in said paragraph of aluminum in coils, plates, sheets, bars, rods, circles, disks, blanks, strips, and so forth, is broad and general in terms embracing aluminum raw materials; and that since the angles are made by the extrusion process, in the same manner that rods are made, they are not articles or wares such as shaped parts but are material for use in the manufacture of articles, the record disclosing that they are used in the manufacture, repair, and overhaul of airplanes as well as in the manufacture of house trailers.

Plaintiff's witness, Robert E. Neal, who was shown to have had many years' experience in the overhaul and maintenance of aircraft and was familiar with materials such as exhibit 1, testified that he had seen such material used in a limited capacity on the hulls of flying boats, and that it was used as a stiffener as a part of the structural members of the hull, being shaped to fit the contour of the particular part of the aircraft. Neal testified that, in the late 1920's, the material was commonly known in the aircraft industry as "extrusion"; that some of the purchasing agents at times referred to it as an extrusion angle bar. He explained the manufacture of "extrusion" in the following terms:

They are manufactured by a process of heat and pressure, forcing it through an orifice. In the cross section of the orifice will be the shape of the extrusion. In other words, if it's an angle why it will be forced through an orifice that will conform to the dimensions of the particular extrusions being manufactured.

To produce a "sheet" of aluminum, he testified that it was manufactured by putting a billet "through a process of rollers which are graduated down to the thickness that you wish the material to be at the finished product, at the end of the finished product. * * * It's run through a series of rollers, and of course the last roller going through will be the desired thickness of the material to be used."

Although the material is received by the plaintiff company in lengths of 17 to 20 feet, it is cut to dimensions of 3 to 4 inches, or it may be cut in lengths of 10 to 15 feet, depending upon the use to which it is to be put, whether in the fuselage, the hull, the wings, or the empennage, being formed by hydropress, shrinking, or by hand, to fit the particular contour where it is to be used. In the manufacture of house trailers, the use is very similar. The material has to be formed, and the lengths will vary to meet the requirements of windows, doors, and the coastal members of the trailer.

Exhibit 1 is not polished but is in the condition as it comes from the die, and in that condition it is used as material by the plaintiff company.

The record also discloses that in the manufacture and repair of airplanes, as well as in the manufacture of house trailers, aluminum in "sheets" is used, being subjected to much the same treatment as that described in the use of angles.

On cross-examination, Neal testified that in its imported condition he would call merchandise represented by exhibit 1 an "extruded aluminum angle"; that it is used in its condition as imported, sometimes without being bent and at other times bent or otherwise formed to meet certain requirements, and holes are drilled to enable the angles to be attached to a surface with the use of screws; that before the merchandise was extruded into the form of exhibit 1, it was a billet, the witness stating that a billet differs from a bar in that it is larger and is in a rough form, being the first condition in which aluminum appears from the ore; that aluminum rectangles are produced from a billet in the same manner as are the angles represented by exhibit 1, the difference being that in one instance the product is an equal angle, and in the other it is a rectangle.

Neal was the only witness in the case and his testimony stands uncontradicted. The case, therefore, resolves itself into the sole question whether aluminum in the form of angles, such as exhibit 1, answers the call of paragraph 374, *supra*, which so far as pertinent here provides for "Aluminum * * * In coils, plates, sheets, bars, rods, circles, disks, blanks, strips, rectangles, and squares."

It is fundamental that tariff statutes are couched in the language of commerce, which is presumptively that in common use, and it is equally elemental that the common and commercial meanings of the terms used to describe merchandise in tariff laws are presumed to be

the same, unless there is clear and convincing proof to the contrary. *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436; *Hartmann Trunk Co.* v. *United States*, 27 C. C. P. A. (Customs) 254, C. A. D. 95; *C. J. Tower & Sons* v. *United States*, 41 C. C. P. A. (Customs) 195, C. A. D. 550.

In the case before us, no effort was made to establish a commercial meaning of the term "bars," or any of the other words above quoted from paragraph 374, different from their common meaning.

Defendant's brief invites our attention to the following definitions of the terms "bars" and "angle" from recognized lexicographic authorities:

The term "bars" is defined in Webster's New International Dictionary at p. 217:

1. A piece of wood, metal, or other material, long in proportion to its breadth and thickness, and having, in general, considerable rigidity, such as one used for a lever, support, hindrance, obstruction, fastening, carrying pole, etc.; as, the *bar* of a door.

\* \* \* \* \* \* \*

3. A piece of some substance of indefinite size, shaped so as to be long in proportion to its breadth and thickness; also, the quantity contained in such a piece; as, a *bar* of gold or of lead; a *bar* of soap. Sometimes used in a collective sense; as, how much *bar* (gold) is there?

See also the pictorial representation figures 1, 2, 3 and 4 appearing on said page.

The term "bars" is defined in Funk and Wagnalls New Standard Dictionary at page 223:

1. A piece of wood, metal, or other solid material, usually long in proportion to its width and thickness, \* \* \*.

The term "angle" is defined in Funk and Wagnalls New Standard Dictionary at page 109:

a.—iron, n. A piece of iron in the form of an angle, as an L iron or V iron; used for joining pieces or as a component member of an iron structure.

The term "angle" is defined in Webster's New International Dictionary at page 102:

angle b Short for ANGLE IRON.

angle bar. Mech. An angle iron.

angle iron. A bent piece of iron used for joining two or more parts of a composite structure at an angle; specif., a rolled iron or steel bar of L section, largely used in structural ironwork.

We are clearly of the opinion that the merchandise represented by exhibit 1 does not respond to any of the definitions of the term "bars." It is, however, more aptly described as an angle, as above defined, except that it is made of aluminum, rather than of iron. It is, of course, obvious upon inspection that the commodity is angular in form. In this connection, it is significant that, on cross-examination, plaintiff's witness Neal clearly recognized exhibit 1 as an aluminum angle, as appears from the following extract from his testimony:

X Q. Now, you are familiar with Exhibit 1?—A. Yes, sir.

X Q. Is that an aluminum angle?—A. That's right; yes, sir.

X Q. In its imported condition it is now an aluminum angle, is that correct?—
A. Well, I would call it an extruded aluminum angle.

X Q. All right, it's an extruded aluminum angle?—A. All right.

In drafting paragraph 374, *supra*, Congress was very precise in limiting the forms of aluminum which should be granted the rate of duty claimed by plaintiff in this case. It was careful to specify aluminum only in "coils, plates, sheets, bars, rods, circles, disks, blanks, strips, rectangles, and squares." Had it intended to include aluminum in angles or forms other than those specifically enumerated, it would have been a simple matter to do so by the use of appropriate language. There would seem to be no more reason for regarding an aluminum angle as a bar or rod than to so regard an aluminum rectangle which Congress has clearly differentiated. Suppose, for instance, that instead of the imported articles being in the form of an angle they were triangular, they would still fail to respond to the terms of paragraph 374, *supra*. Since Congress did not provide for aluminum angles, we are not permitted to supply the deficiency. To do so would be nothing short of judicial legislation. We are not concerned with the policy or wisdom of Congress in limiting paragraph 374 to the forms of aluminum expressly enumerated therein, and whether Congress omitted aluminum angles from paragraph 374 by intendment or through oversight, it would be idle to speculate. As Congress did not provide for aluminum angles expressly or by implication in said paragraph, we are constrained to hold that the claimed classification herein cannot be sustained.

After careful consideration of the cases cited by the parties in their briefs, we find nothing therein which would militate against the conclusion herein reached.

Upon the record before us and for the foregoing reasons, the protest is overruled in all respects.

Judgment will be entered accordingly.